UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

BRENDA G. SIMMONS,                          )
                                            )
              Plaintiff,                    )
                                            )
        v.                                  )          2:10-cv-275-WGH-JMS
                                            )
INDIANA STATE POLICE,                       )
                                            )
              Defendant.                    )

**ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This matter is before the Honorable William G. Hussmann, Jr., United

States Magistrate Judge, on Defendant's Motion for Summary Judgment filed on

December 5, 2011.[1]  (Docket Nos. 29-30).  Plaintiff filed a Statement of Disputed

Issues of Fact and Memorandum in Opposition to Summary Judgment on

February 6, 2012.  (Docket No. 34).  Defendant filed its Reply brief on February

15, 2012.  (Docket No. 35).

**I.  Factual Background**

The facts in the light most favorable to the non-moving party are as

follows:

**1.  Plaintiff's Employment with the Indiana State Police**

---

[1]On February 22, 2010, the parties consented to Magistrate Judge jurisdiction in this case.  (Docket No. 12).  U.S. District Judge Jane Magnus-Stinson entered an Order of Reference on February 25, 2010.  (Docket No. 13).

Plaintiff, Brenda Simmons, was a trooper with the Indiana State Police ("ISP") who worked at the Terre Haute Post ("the Post"), where approximately 30 police officers worked. (Deposition of Brenda Simmons ("Simmons Dep.") at 22, 25). The Post covered Parke, Vermillion, Vigo, Clay, and Sullivan County, Indiana. (*Id.* at 25). Plaintiff was hired by the ISP in 1987. (*Id.* at 22). A typical day for Plaintiff involved patrolling roads and investigating crimes. (*Id.* at 27).[2]

### 2. Plaintiff's Interaction with Sergeant Chris Effner

On November 6, 2006, Plaintiff filed an internal Indiana State Police Equal Employment Opportunity allegation ("the internal complaint") of hostile work environment and harassment with Major Nila Miller-Cronk ("Miller-Cronk"). (Declaration of Nila Miller-Cronk ("Miller-Cronk Decl.") ¶ 5). The filing of the internal complaint was triggered by an incident involving Sergeant Chris Effner ("Effner")[3] who called her, while she was at lunch, concerning an accident report. (Simmons Dep. at 33-34). Plaintiff had forgotten to turn the accident report in, and the individual who was involved in the accident was at the Post requesting the document. (*Id.*). Upon arriving at the Post, Plaintiff was subjected to Effner, who was the Post Commander that day, yelling that she had to get her crash reports in on time. (*Id.* at 35-36). The individual requesting the report had

---

[2]Plaintiff was making approximately $50,000 a year. She made anywhere between $3000 and $6000 in overtime a year. Overtime consisted of working special details such as construction zones, DUI patrols, and holiday events. (Simmons Dep. at 19, 26).

[3]Effner was not Plaintiff's supervisor at the time this happened but, rather, Sergeant David Edwards ("Edwards") was. Effner, however, was Plaintiff's supervisor for "awhile." (Simmons Dep. at 41).

previously yelled at the receptionist. (*Id.* at 37). Thereafter Effner yelled at Plaintiff in front of staff and the individual. (*Id.* at 37-38).

Plaintiff complains that there were other objectionable incidents between herself and Effner. One morning, Effner approached Plaintiff near her house and complained that Plaintiff owed the State half an hour because she had gone back home briefly after clocking in. (Simmons Dep. at 41). He was also very critical of all of her paperwork and had written poor evaluations while her previous supervisors had not. (*Id.* at 42). Additionally, he yelled at her for contacting the family of a victim after she had worked a crash fatality. (*Id.* at 42-43).

Plaintiff also recalls two incidents involving Effner occurring after she filed her internal complaint. Once she was faced with a situation in which she could not decide whether to take a person into custody who was wanted but had documents suggesting otherwise. She called into the Post, and Effner was working Post Command. She asked him to find out if the woman was wanted, and he indicated she could make the decision on her own. (Simmons Dep. at 46-47). Also, in another incident, Effner's wife, who was a dispatcher at the Post, indicated to Plaintiff that she was not to respond to an officer's request for assistance because another officer from the Post was going to respond despite the fact that the Post was five miles away and Plaintiff was closer. (*Id.* at 47-48).

### 3. Investigation of Plaintiff's Internal Complaint with the ISP

Plaintiff filed her internal complaint in response to the incident where Effner yelled at her; she alleged that it was one of many incidents involving Effner. (Simmons Dep. at Ex. 1). On January 16, 2007, First Sergeant Shannon Spreckelmeyer and Sergeant Mark French ("the investigators") were assigned to conduct an investigation into the internal complaint filed by Plaintiff. (Miller-Cronk Decl. ¶ 8). On January 26, 2007, the investigators conducted their initial interview with Plaintiff, and from February 1, 2007, until April 30, 2007, interviews were conducted with witnesses. (Id. ¶ 9). At the end of May 2007, Miller-Cronk attended EEOC training at which she asserts that she was lead to believe that any internal investigation must be placed on hold once a charge of discrimination has been filed with the EEOC. (Miller-Cronk Decl. ¶ 12). According to Miller-Cronk, the internal investigation was held up because Plaintiff's allegations changed and because absences by Plaintiff made it difficult to coordinate with her to conduct interviews. (*Id.* ¶¶ 14-15). Once Plaintiff filed her Charge of Discrimination with the EEOC ("the EEOC charge"), which was December 6, 2007, the internal investigation was placed on hold. (*Id.* ¶ 17).

**4. Plaintiff's Application for a Detective Position**

Plaintiff applied for the position of Detective[4] for the Terre Haute Post in October 2006.[5] (Declaration of Bradley S. Scully ("Scully Decl.") ¶¶ 19-20).

---

[4]The position that Plaintiff applied for is referred to at various places within the record as both "Investigator" and "Detective." For consistency's sake, we will refer to the position as Detective.

[5]Plaintiff had previously applied for a Detective position, but is not claiming that she was discriminated against when she did not obtain that position. (Simmons Dep. at 55-

(continued...)

Plaintiff, Master Trooper John D. Goldner ("Goldner"), and Senior Trooper

Christopher R. Wright ("Wright") were the three eligible officers who submitted

Part I of the Application. (*Id.* ¶ 20). Based on the promotion process scoring

criteria (which takes into account the Written Test, Structured Oral Interview,

Performance Appraisal, longevity, and civilian college education) Plaintiff received

the highest score. (*Id.* ¶ 22). Part II of the application titled Promotional

Endorsement was completed by each of the applicant's immediate and

intermediate supervisors. Plaintiff received unfavorable Promotional

Endorsements[6] from Edwards, who was her supervisor, and District

Commander, Lieutenant Brent Johnson. (*See* Simmons Dep. at Ex. 2). Wright

and Goldner received favorable Promotion Endorsements from their respective

supervisors. (Scully Decl. ¶ 24).

The final results for each of the three qualified applicants for the Detective

position were forwarded to the State Police Superintendent who, according to ISP

policy, could select any of the top three applicants from the list provided for

---

[5](...continued)
57). She applied because she had taken a temporary Detective assignment, she had been encouraged to try for the position, and she thought the ISP could use more women Detectives because women can be better at interacting with certain victims including children and other women. (*Id.*).

[6]Plaintiff's unfavorable endorsements noted that there was an ongoing problem with Plaintiff earning and then burning sick time, that she was using personal and vacation leave for sick leave, that there had been issues with her ability to timely turn in reports, and that she repeatedly had failed to follow through on traffic and criminal investigations. (Simmons Dep. at Ex. 2).

review.  (Scully Decl. ¶¶ 25-26).  On January 22, 2007, Wright was selected as the new Detective.  (*Id.* ¶ 26).[7]

### 5.  Problems with Plaintiff's Work Schedule and Eventual Disability

Plaintiff has been diagnosed with mixed connective tissue disorder which is an autoimmune disorder similar to lupus.  (Simmons Dep. at 67).  This disorder causes fatigue and joint pain and is exacerbated by stress.  (*Id.* at 66).  Sometime in late 2006, the Terre Haute Post was going to require Plaintiff to work an entire week of the midnight shift from 11:30 p.m. until 7:00 a.m.  (*Id.* at 72).  Plaintiff felt that working the midnight shift would interfere with her sleep patterns and could exacerbate the fatigue associated with her connective tissue disorder.  (*Id.* at 72).  According to Plaintiff, working the midnight shift was something that all other officers were required to do, except for two other male troopers who also had impairments.  (*Id.* at 72, 74).  On November 23, 2006, Plaintiff's rheumatologist, Douglas B. Smith, M.D., provided her with a doctor's note that indicated she could not work the midnight shift.  (*See* Simmons Dep. at Ex. 3).

On December 7, 2006, Plaintiff was sent to ISP doctor, George A. DeSilvester, M.D., for a fitness for duty exam due to connective tissue disorder that leaves her fatigued.  (Simmons Dep. at Exs. 4-5).  Dr. DeSilvester recommended that it would be in Plaintiff's best interest for the ISP to consider

---

[7]Defendant asserts that Plaintiff's unfavorable Promotional Endorsements were the determinative factor in the decision to select Wright instead of Plaintiff.  (Scully Decl. ¶ 27).

that she be maintained in a regular shift capacity, because alternating between shifts would cause her to experience additional fatigue. (*Id.* at Ex. 5; Miller-Cronk Decl. ¶ 7).[8]

On May 10, 2007, Plaintiff was given the option of working the shift from 7:00 a.m. to 3:30 p.m. or the shift from 3:30 p.m. to 12:00 a.m. (Declaration of Brent S. Johnson ¶ 5). Plaintiff chose the 7:00 a.m. to 3:30 p.m. shift. (*Id.*). Plaintiff was informed that her scheduling assignment to a consistent regular shift would preclude her from working special assignments such as the state fair. (*Id.* ¶ 7). Plaintiff was also advised that if she wanted to take college classes she would have to do so on off days or at nights. (*Id.* ¶ 8). Finally, Plaintiff was advised that she could work special projects, but only during a regularly scheduled day off or by using comp time or vacation time during normally scheduled duty hours. (*Id.* ¶ 9). Plaintiff admits that she was told she could work overtime on her days off. (Simmons Dep. at 80).

On November 18, 2007, Plaintiff went on non-line of duty disability. (Miller-Cronk Decl. ¶ 16). Plaintiff requested to go on non-line of duty disability due to her health condition as indicated in her correspondence request. (*See* Simmons Dep. at Exs. 9-10). She is still employed by ISP while on disability and still receives all of her benefits. (Simmons Dep. at 107).

---

[8]On June 14, 2007, Plaintiff again was sent to an ISP doctor, Steven M. Moffatt, M.D., for a fitness for duty exam due to connective tissue disorder. He too requested that the ISP make a reasonable accommodation to a consistent assigned shift assignment for Plaintiff. (Miller-Cronk Decl. ¶ 13; Simmons Dep. at Ex. 7).

## 6. Plaintiff's EEOC Charge

On December 6, 2007, Plaintiff filed her EEOC charge. Only the discrimination and disability "boxes" are checked on the form.[9] Within the body of the EEOC charge, Plaintiff alleged that she was discriminated against because she was female and because of her disability. Specifically, Plaintiff indicated that: 1) her internal complaint with the ISP alleging a hostile work environment had been pending for over a year; 2) she had been denied a promotion to Detective even though she had the highest score, and a male had gotten the job instead; and 3) she had been denied an accommodation so that she could work overtime and special detail assignments while other male employees with impairments were treated more favorably. (Simmons Dep. at Ex. 6). The EEOC issued a right to sue letter on July 20, 2010. (*Id.* at Ex. 12).[10]

## 7. Plaintiff's Complaint

_____

[9]Plaintiff did not check the "box" for retaliation.

[10]Plaintiff argues that the EEOC "found that there was reasonable cause to believe Plaintiff's charge of discrimination was true." (Plaintiff's Statement of Disputed Issues of Fact and Memorandum in Opposition to Summary Judgment at 2). Plaintiff references that the findings of the EEOC are "attached," but no attachment is found in the record. Later in her brief, Plaintiff asserts that:

> The Commission's Determination found that the facts did not establish a violation of Title VII for denying Trooper Simmons a promotion based on her gender. However, it went on the [sic] state:
>> However, the Commission finds that Charging Party was subjected to **retaliation** in violation of Title VII when Respondent placed her internal discrimination complaint on hold after she filed her EEOC charge.

(*Id.* at 6(emphasis in original)). From these two arguments, and without being able to view the EEOC's "findings," it appears that the only finding by the EEOC is one of possible retaliation. The only other document of record–the Notice of Right to Sue found at Exhibit 12 of Simmons Deposition–reflects that "conciliation" of the case was not successful.

Plaintiff filed suit alleging that Defendant engaged in a pattern of sexual discrimination against her from 2004 to 2007 by treating her differently from other male employees. Plaintiff also alleged that she was discriminated against when Defendant unduly delayed the internal investigation of her claims of sexual discrimination. Importantly, the Complaint does not explicitly allege a claim for retaliation.

Defendant filed the Motion for Summary Judgment at issue here arguing that: 1) Plaintiff failed to exhaust her administrative remedies by failing to raise certain issues in her EEOC charge; 2) Plaintiff's claims for events that occured earlier than 300 days before the filing of Plaintiff's EEOC charge are time-barred; and 3) Plaintiff has failed to demonstrate discrimination under either the direct or indirect method of proof. Having examined the arguments of the parties and the relevant legal authorities, the Court concludes that Defendant's Motion for Summary Judgment must be GRANTED.

## II.  Summary Judgment Standard

Summary judgment is proper only if the record shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The moving party bears the burden of informing the court of the basis for its motion and demonstrating the "absence of evidence on an essential element of the non-moving party's case," *Celotex Corp.,* 477 U.S. at 323, 325. To withstand a motion for summary judgment, the non-moving party may not simply rest on the pleadings, but rather must "make a showing

sufficient to establish the existence of [the] element[s] essential to that party's case, and on which that party will bear the burden of proof at trial. . . ." *Id.* at 322. If the non-moving party fails to make this showing, then the moving party is entitled to judgment as a matter of law. *Id.* at 323.

In determining whether a genuine issue of material fact exists, the court must view the record and all reasonable inferences in the light most favorable to the non-moving party. *See Nat'l Soffit & Escutcheons, Inc. v. Superior Sys., Inc.,* 98 F.3d 262, 264 (7th Cir. 1996). No genuine issue exists if the record viewed as a whole could not lead a rational trier of fact to find for the non-moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Ritchie v. Glidden Co.,* 242 F.3d 713, 720 (7th Cir. 2001).

## III. Discussion

Plaintiff brought her claim of discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* Under Title VII it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2.

### A. Plaintiff's Suit is Limited to Those Instances of Discrimination That Are Like or Reasonably Related to Plaintiff's EEOC Charge

Before filing a Title VII claim, an individual must first "file a timely charge with the EEOC encompassing the acts complained of as a prerequisite to filing

suit in federal court." *Babrocky v. Jewel Food Co.,* 773 F.2d 857, 863 (7th Cir.

1985). Hence, a plaintiff attempting to bring a claim of discrimination cannot

bring such a claim if it was not included in his EEOC charge. *Cheek v. Western*

*and Southern Life Ins. Co.,* 31 F.3d 497, 500 (7th Cir. 1994). Put another way,

"[a]n aggrieved employee may not complain to the EEOC of only certain

instances of discrimination, and then seek judicial relief for different instances of

discrimination." *Rush v. McDonald's Corp.,* 966 F.2d 1104, 1110 (7th Cir. 1992).

The purpose of this requirement is two-fold: it gives the EEOC and the employer

an opportunity to settle the dispute, and it gives the employer fair notice of any

charges against it. *Geldon v. South Milwaukee School Dist.,* 414 F.3d 817, 819

(7th Cir. 2005). Although this rule is not jurisdictional, it does provide a

condition precedent with which Title VII plaintiffs must comply. *Babrocky,* 773

F.2d at 864.

Because many people who bring EEOC charges do so without the

assistance of counsel, the Seventh Circuit has concluded that a plaintiff may

bring a claim not explicitly raised in an EEOC charge "if the claim is like or

reasonably related to the EEOC charges, and the claim in the complaint

reasonably could be expected to grow out of an EEOC investigation of the

charge." *Peters v. Renaissance Hotel Operating Co.,* 307 F.3d 535, 550 (7th Cir.

2002)(internal citations and quotations omitted). In order to satisfy this

requirement, at a minimum, the complaint and the EEOC charge "must describe

the same conduct and implicate the same individuals." *Ezell v. Potter,* 400 F.3d

1041, 1046 (7th Cir. 2005). Hence, the Seventh Circuit has concluded that

"[n]ormally, retaliation . . . discrimination, and . . . harassment charges are not like or reasonably related to one another to permit an EEOC charge of one type of wrong to support a subsequent civil suit for another." *Sitar v. Indiana Dept. of Transp.,* 344 F.3d 720, 726 (7th Cir. 2003)(internal quotations omitted).[11]  Only where the claims are "so related and intertwined in time, people, and substance that to ignore that relationship for a strict and technical application of the rule would subvert the liberal remedial purposes of the Act," will instances not described in the EEOC charge be considered.  *Kristufek v. Hussmann Foodservice Co., Toastmaster Div.,* 985 F.2d 364, 368 (7th Cir. 1993).

In this instance, Plaintiff's EEOC charge raises only three occurrences of discrimination: 1) the failure to resolve her internal complaint with the ISP that alleged a hostile work environment; 2) the failure to hire her as a Detective; and 3) the failure to provide her with the same overtime and special detail assignments as other similarly situated male employees.  At page two of Plaintiff's Statement of Disputed Issues of Fact and Memorandum in Opposition to Summary Judgment, she alleges that she was also discriminated against by essentially being forced to go on non-line of duty disability.  However, because this allegation was not raised in Plaintiff's EEOC charge and is not like or

---

[11]The one exception is when an individual files an EEOC charge and then allegedly suffers retaliation in response to the filing of the EEOC charge.  The Seventh Circuit does not require the filing of a second EEOC charge in order to allege retaliation as a result of the filing of the first EEOC charge.  *See Malhotra v. Cotter & Co.,* 885 F.2d 1305, 1312 (7th Cir. 1989).

reasonably related to the other instances of alleged discrimination in her EEOC charge, Plaintiff is barred from now raising this issue for the first time.

Defendant's Motion for Summary Judgment also asks the Court for a finding that Plaintiff can not allege retaliation since she failed to raise any claim of retaliation in her EEOC charge. As explained above, the record reflects that Plaintiff never raised the issue of retaliation in her EEOC charge. More importantly, Plaintiff never raised the issue of retaliation in her Complaint. Now, for the very first time, nearly 16 months after originally filing her Complaint, Plaintiff attempts, in her Response to Defendant's Motion for Summary Judgment, to allege retaliation. The Court is prohibited from entertaining Plaintiff's retaliation claim that was never raised in her Complaint. *See Cable v. Ivy Tech State College*, 200 F.3d 467, 477 (7th Cir. 1999).

**B. Some of Plaintiff's Other Claims are Time-Barred**

While some of Plaintiff's claims are barred because they were not raised in Plaintiff's EEOC charge, other claims raised by Plaintiff are barred because they occurred more than 300 days before Plaintiff filed her EEOC charge. In order to bring a claim pursuant to Title VII, a plaintiff is required to file her EEOC charge within 300 days of the conduct underlying the claim. *Moore v. Vital Products, Inc.*, 641 F.3d 253, 256 (7th Cir. 2011). "Any complaint of conduct that occurred more than 300 days before the relevant EEOC charge is time-barred." *Id.* Plaintiff did not file her EEOC charge until December 6, 2007. Consequently, as Plaintiff concedes in her Response, any claim based on incidents that occurred prior to February 10, 2007, is time-barred. This would include the failure to

promote Plaintiff to Detective which occurred when Wright was selected as the new Detective on January 22, 2007. It also includes the allegedly hostile actions taken by Effner, all of which occurred prior to 2007.

Because some of Plaintiff's claims are time-barred and others were not raised in Plaintiff's EEOC charge, there are only two instances of allegedly discriminatory conduct that must be examined: Defendant's delay and eventual failure to conclude the investigation into Plaintiff's internal complaint; and Defendant's alleged refusal to allow Plaintiff to work overtime and on special detail assignments.

**C. Plaintiff's Remaining Discrimination Claims Fail to Make a Prima Facie Case of Discrimination**

A plaintiff attempting to demonstrate discrimination may do so by way of the direct or indirect method of proof. *Vakharia v. Swedish Covenant Hosp.,* 190 F.3d 799, 806 (7th Cir. 1999). Plaintiff has not made an attempt to demonstrate any direct evidence of discrimination. Hence, the court must examine Plaintiff's claims to see if there is any indirect evidence of discrimination by using the burden-shifting method set forth in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under the *McDonnell-Douglas* framework, an employee must always first establish her prima facie case. *Pafford v. Herman,* 148 F.3d 658, 665 (7th Cir. 1998). Once the employee has carried her burden of demonstrating a prima facie case, there is a presumption of discrimination, and the burden shifts to the employer who must articulate a legitimate, nondiscriminatory reason for the action. *Id.* If the employer provides

such a reason, the burden then shifts back to the employee to prove that the employer's stated reason is a mere pretext.[12] *Vakharia,* 190 F.3d at 806-07.

In this instance, Plaintiff has failed to demonstrate a prima facie case of discrimination concerning her work schedule. For Plaintiff to demonstrate a prima facie case of sex discrimination, she must show that: (1) she belongs to a protected class; (2) she performed her job satisfactorily; (3) she suffered a materially adverse employment action; and (4) her employer treated similarly situated male employees more favorably. *Lenoir v. Roll Coater, Inc.,* 13 F.3d 1130, 1132 (7th Cir. 1994).

While Plaintiff, as a female, is a member of a protected class and arguably was performing her job to her employer's legitimate expectations, she still must demonstrate that she experienced an adverse employment action. "[N]ot everything that makes an employee unhappy is an actionable adverse action. For an employment action to be actionable, it must be a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibility, or a decision causing a significant change in benefits." *Bell v. E.P.A.*, 232 F.3d 546, 555 (7th Cir. 2000) (citing *Burlington Indus. v. Ellerth,* 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). A materially adverse employment action falls into three categories: (1) actions that affect an employee's current wealth such as compensation, fringe benefits, and financial terms of employment including termination; (2) actions that affect the

---

[12]The Seventh Circuit has determined that pretext means a phony reason for the employer's actions. *See Jackson v. E.J. Brach Corp.,* 176 F.3d 971, 983 (7th Cir. 1999).

employee's career prospects; and (3) changes to the employee's work conditions including subjecting her to "humiliating, degrading, unsafe, unhealthy, or otherwise significant negative alteration in [her] work place environment." *Lewis v. City of Chicago*, 496 F.3d 645, 653 (7th Cir. 2007). The "purpose of the adverse employment action requirement is to provide a reasonable limiting principle for the type of conduct actionable under the statute." *Phelan v. Cook County*, 463 F.3d 773, 780 (7th Cir. 2006).

Plaintiff alleges that, once she was placed in a consistent regular shift, she was denied the ability to work overtime or special detail assignments while other similarly situated male employees were allowed to work special detail or overtime. Plaintiff asserts that she was making approximately $50,000 a year and that she made from $3000 to $6000 in overtime a year.

The denial of overtime pay can constitute a materially adverse employment action. *Lewis v*, 496 F.3d at 653-54. However, Plaintiff has not provided any evidence demonstrating how much she made in 2006 compared to how much she made after she was placed in a consistent regular shift. Consequently, it is difficult to evaluate whether Plaintiff actually suffered any change in her actual compensation. Furthermore, Plaintiff admits that she was allowed to work overtime if it was on an off day, and she was essentially only denied the ability to work extra hours after her consistent regular shift had ended. For an employer's actions to rise to the level of a materially adverse employment action, it must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Traylor v. Brown*, 295 F.3d 783, 788–89 (7th Cir. 2002). While

it might have been inconvenient for Plaintiff to work special projects or overtime on her off days instead of simply working extra hours after her shift was over, this does not constitute a materially adverse employment action. Therefore, Plaintiff has failed to meet her burden of demonstrating a prima facie case of discrimination and her claim based on the denial of overtime and special detail assignments must be DISMISSED.

As for Plaintiff's claim that Defendant wrongfully delayed an investigation into her internal complaint of a hostile work environment, Plaintiff has not provided the Court with any authority that suggests that delaying an internal investigation qualifies as an adverse employment action. The delay did not amount to a change in Plaintiff's compensation, nor did it affect Plaintiff's career prospects. It also can not be construed as a change in Plaintiff's work conditions. Accordingly, Plaintiff has failed to demonstrate that this was a materially adverse employment action.[13] Plaintiff has failed to meet her burden of demonstrating a prima facie case of discrimination surrounding the delay in the investigation of her internal complaint, and Plaintiff's claim must be DISMISSED.

**IV. Conclusion**

---

[13]Even if this were a materially adverse employment action, Major Nila Miller-Cronk has indicated that it was her honest belief that she was supposed to place Plaintiff's internal complaint on hold after Plaintiff filed an EEOC charge. Thus, there was a legitimate non-discriminatory reason why the investigation into Plaintiff's internal complaint was never completed, and Plaintiff has failed to produce any evidence that this stated reason was a mere pretext for discrimination.

In summary, Plaintiff's EEOC charge did not explicitly describe a claim for retaliation. Under Seventh Circuit precedent, "retaliation," "discrimination," and "harassment" are not normally like or reasonably related to one another to permit an EEOC charge of one type of wrong to support a subsequent suit based on another type of wrong. Notwithstanding the EEOC's attempt at conciliation, the facts listed in the record do not implicate the Plaintiff was subjected to further retaliatory conduct after the filing of her EEOC charge. More specifically, Plaintiff's Complaint does not explicitly claim retaliation. Therefore, no claim of retaliation is actionable in this case.

The remaining claims of discriminatory treatment are time barred, are outside the scope of the EEOC charge, or are instances that do not amount to adverse employment action.

For the reasons outlined above, Defendant's Motion for Summary Judgment is **GRANTED.** Plaintiff's Complaint alleging violation of Title VII of the Civil Rights Act of 1964 is **DISMISSED**. A separate Judgment shall issue accordingly.

**SO ORDERED.**

**Dated:** 02/29/2012

William G. Hussmann, Jr.
United States Magistrate Judge
Southern District of Indiana

**<u>Electronic copies to:</u>**

Laura Lee Bowker
INDIANA ATTORNEY GENERAL
laura.bowker@atg.in.gov

Eric A. Frey
FREY LAW FIRM
freylaw@aol.com

Cory Christian Voight
INDIANA OFFICE OF THE ATTORNEY GENERAL
cory.voight@atg.in.gov